# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PSV ENTERPRISES, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 20-cv-2287 (KBJ) |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER
## TRANSFERRING CASE TO THE DISTRICT OF NEBRASKA

Plaintiff PSV Enterprises, LLC ("PSV") is a construction company headquartered in North Dakota. (*See* Compl., ECF No. 1, ¶ 7.) On August 19, 2020, PSV filed the instant action against the United States Citizenship and Immigration Services ("USCIS") and the Director of USCIS (collectively, "Defendants"), challenging the decision of USCIS's Nebraska Service Center ("NSC") to deny four Form I-140 petitions that PSV had submitted. (*See id.* ¶¶ 1, 8.) Broadly speaking, Form I-140 allows employers, such as PSV, to seek authorization for a non-citizen to work and permanently reside in the United States. *See George v. Napolitano*, 693 F. Supp. 2d 125, 128 (D.D.C. 2010); *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 44–45 (D.D.C. 2011). PSV had submitted Form I-140 petitions on behalf of four of its employees (*see* Compl. ¶ 7), and in its complaint, PSV claims that NSC's decision to deny the four petitions violated the Administrative Procedure Act (*see id.* ¶ 4), because NSC did not comply with the Immigration and Nationality Act ("INA") or its

accompanying regulations, and did not undertake reasoned decision making with respect to the denial determination (*see id.* ¶¶ 11–19, 46). As relevant here, PSV alleges, in particular, that NSC improperly rejected PSV's financial statements on the ground that they were not audited (*see id.* ¶¶ 36, 47–49), and that NSC failed to consider the other evidence that PSV had submitted with the petitions in order to demonstrate its ability to pay the employees' wages (*see id.* ¶¶ 50–51).[1]

Before this Court at present is a motion that Defendants have filed that seeks transfer of PSV's legal action to the District of Nebraska or the District of North Dakota pursuant to section 1404(a) of Title 28 of the United States Code. (*See* Defs.' Mot. to Transfer, ECF No. 13, at 1; *see also* Defs.' Mem. in Supp. of Mot. to Transfer ("Defs.' Mot."), ECF No. 13-1, at 1.)[2] Defendants do not dispute that the District of Columbia is a proper venue, but they maintain that this case should be transferred "in the interest of justice[,]" because PSV's complaint concerns "final agency actions that were taken in Nebraska" and "has no meaningful connection to the District of Columbia." (Defs.' Mot. at 1.) PSV responds that Defendants "reside in this District[,]" and that "USCIS's decision to deny the petitions at issue marks an agency-level policy determination, in violation of statute and regulation, as evidenced by the fact that multiple USCIS off[ic]ers made the same erroneous determination over time."

---

[1] Under the INA, employment-based visas are allocated based on various preference categories, *see* 8 U.S.C. § 1153(b), and PSV had sought to classify the four employees as "[o]ther qualified immigrants who are capable . . . of performing unskilled labor, not of a temporary or seasonal nature, for which qualified workers are not available in the United States[,]" *id.* § 1153(b)(3)(A)(iii). (*See also* Compl. ¶ 13.) Importantly for present purposes, USCIS's regulations require employers filing petitions under that category to submit "evidence that the prospective United States employer has the ability to pay the proffered wage . . . until the beneficiary obtains lawful permanent residence." *See* 8 C.F.R. § 204.5(g)(2).

[2] Page number citations to the documents that the parties have filed refer to the numbers automatically assigned by the Court's electronic case filing system.

(Compl. ¶ 6; *see also* Pl.'s Opp'n to Defs.' Mot. to Transfer Venue ("Pl.'s Opp'n"), ECF No. 16, at 1.)

For the reasons explained below, this Court concludes that the locus of the instant controversy lies in Nebraska rather than the District of Columbia, and thus that Defendants have established that a transfer is warranted. Therefore, Defendants' motion to transfer will be **GRANTED**, and this case will be **TRANSFERRED** to the District of Nebraska.

I.

Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). In evaluating a defendant's motion to transfer under section 1404(a), a district court must first determine whether the lawsuit "might have been brought" in the districts where the defendant seeks to transfer the case. *See id*. If so, the court must then consider various private and public interest factors to assess whether transferring the case would be in the "interest of convenience and justice[.]" *See W. Watersheds Project v. Tidwell*, 306 F. Supp. 3d 350, 356 (D.D.C. 2017).

With respect to private interest factors, courts generally consider: "(1) the plaintiff's choice of forum, (2) the defendant's choice of forum, (3) where the claim arose, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof." *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 331 (D.D.C. 2020). As for public interest factors, courts typically assess: "(1) the transferee court's familiarity with the applicable law; (2) the relative

3

congestion of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Id.* at 334. District courts have "broad discretion" in balancing these private and public interest factors, *see W. Watersheds Project*, 306 F. Supp. 3d at 356 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)), but the defendant bears the burden of demonstrating that a transfer is warranted, *see id.*

II.

When a plaintiff brings a civil action against an officer, employee, or agency of the United States, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). In this case, venue is proper under section 1391(e) in the District of Columbia, because the agency was headquartered here when PSV filed the instant complaint (*see* Compl. ¶ 6), *and also* the District of Nebraska, because NSC adjudicated PSV's visa petitions in that district (*see id.* ¶ 8), which means that "a substantial part of the events or omissions giving rise to [PSV's] claim occurred" there, *see* 28 U.S.C. § 1391(e)(1); *see also, e.g.*, *Pengbo Li v. Miller*, No. 20-cv-1122, 2021 WL 1124541, at *3 (D.D.C. Mar. 24, 2021) (determining that the District of Nebraska was "an appropriate venue because it is the location where NSC processed and denied" plaintiffs' Form I-140 immigrant visa petition). Venue is also proper in the District of North Dakota, because that is the district wherein PSV resides. (*See* Compl. ¶ 7.) Indeed, PSV concedes that "this case could have been filed in . . . the District of North

4

Dakota[] or the District of Nebraska" for purposes of section 1391(e). (Pl.'s Opp'n at 3.)

Accordingly, the remaining question that Defendants' motion raises is whether transferring the instant lawsuit to the District of Nebraska or the District of North Dakota would serve the interests of convenience and justice. *See W. Watersheds Project*, 306 F. Supp. 3d at 356.

### III.

The private interest factors and the public interest factors both weigh in favor of transferring this matter to the District of Nebraska. Starting with the private interest factors, this Court finds that the balance of interests tilts against PSV's choice of forum. To be sure, courts typically "accord[] deference" to a plaintiff's preferred venue, *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012) (internal quotation marks and citation omitted); however, that deference is "weakened" when "the chosen forum is not [the] plaintiff's home forum" and when there is no meaningful "nexus between the case and the plaintiff's chosen forum," *id.* (internal quotation marks and citation omitted). PSV is not a resident of the District of Columbia (*see* Compl. ¶ 7), and there is no meaningful nexus between PSV's lawsuit and this District because PSV is challenging NSC's denials of its Form I-140 petitions, and those allegedly unlawful denials took place in Nebraska (*see id.* ¶¶ 8, 46). *See also Pengbo Li*, 2021 WL 1124541, at *4 (noting that "challenges to individual immigration decisions generally arise in the forum of the USCIS service center that processed the application at issue"); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 81 (D.D.C. 2009) (observing that transfer may be proper where there is no allegation that USCIS officials

5

in Washington, D.C. "were personally involved with the processing or adjudication of [plaintiff's] application"). Nor do the convenience-related private interest factors "sway the transfer inquiry in either direction" because the parties here, as elsewhere, have "agree[d] that the instant dispute will be resolved based on the administrative record." *W. Watersheds Project*, 306 F. Supp. 3d at 360. (*See also* Pl.'s Opp'n at 8; Defs.' Reply in Supp. of Mot. to Transfer ("Defs.' Reply"), ECF No. 18, at 5.) Indeed, if anything, these factors slightly favor transfer as well, because the administrative record is located in Nebraska (Defs.' Reply at 5), and "potential witnesses, if any, could include [NSC] employees involved in processing or deciding [PSV's] application[s]," *Aftab*, 597 F. Supp. 2d at 83.

PSV attempts to connect the instant case to the District of Columbia by arguing that "this action involves an agency-wide change in policy" with respect to "reviewing the employer's ability to pay the proffered wage." (Pl.'s Opp'n at 5–6; *see also* Compl. ¶ 3 (alleging that "USCIS's decisions to deny all the petitions rely on a new, previously unstated, agency requirement" that "it will not accept financial statements reviewed by an independent expert[,]" and that this alleged new policy "marks an agency-level shift away from the agency's own I-140 National Standard Operating Procedure" and "the USCIS Adjudicator's Field Manual"). As ostensible support for this assertion, PSV notes that "at least two separate [NSC] officers" adjudicated PSV's petitions, and each allegedly "stated plainly in the denials that reviewed financial statements are not reliable evidence of the employer's ability to pay the proffered wage." (Pl.'s Opp'n at 6; *see also* Ex. 4 to Pl.'s Mot. for Prelim. Inj., ECF No. 2-2, at 14, 23.) But the mere fact that two NSC officers made similar statements when denying PSV's applications

does not give rise to a reasonable inference that the statements are traceable to some "undisclosed agency-level shift in policy[,]" much less that such a policy was necessarily "directed by USCIS headquarters in the District of Columbia[,]" as PSV speculates. (*See* Pl.'s Opp'n at 8.) And like other courts considering similar arguments, this Court is skeptical of attempts to "manufacture venue" by recasting local determinations as "broad national policy directives." *See EfficientIP, Inc. v. Cuccinelli*, No. 20-cv-1455, 2020 WL 6683068, at *3 (D.D.C. Nov. 12, 2020); *see also Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).

And even if such an agency-wide policy existed, PSV is not asserting a "general, broad-based challenge" to the agency's alleged policy regarding unaudited financial statements, *see Abusadeh v. Chertoff*, No. 06-cv-2014, 2007 WL 2111036, at *6 (D.D.C. July 23, 2007); rather, "its dispute is with *implementation* of th[at] polic[y]" in NSC's denials of PSV's I-140 petitions, which took place in Nebraska, *see EfficientIP*, 2020 WL 6683068, at *3 (internal quotation marks and citation omitted). Indeed, in its Request for Relief, PSV asks the Court to set aside NSC's decisions and order approval of PSV's petitions (*see* Compl., Request for Relief, ¶¶ 3–4)—requests that do not implicate USCIS's "nationwide policies for adjudicating visa petitions" (*see* Pl.'s Opp'n at 7). Therefore, PSV's complaint *still* lacks a meaningful tie to the alleged national policy that it says warrants litigation of its claims in the District of Columbia.

In short, given the complaint's particularized focus on decisions made in Nebraska by NSC, "this Court has little doubt that the locus of the instant controversy lies in [Nebraska], and that its connection to the District of Columbia is tenuous at best." *W. Watersheds Project*, 306 F. Supp. 3d at 357 (internal quotation marks and

7

citation omitted).  Thus, the private interest factors weigh in favor of transferring this case to the District of Nebraska.  *See Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017) (observing that "[c]ases challenging the actions of local USCIS offices are frequently, and appropriately, transferred to the venue encompassing those local offices").

The Court reaches the same conclusion with respect to the public interest factors.  To start, this case concerns matters of federal law, and courts in the District of Nebraska and the District of Columbia are therefore "equally familiar" with the governing law.  *Aftab*, 597 F. Supp. 2d at 83.  What is more, the statistics cited by the parties indicate that the District of Nebraska has a shorter median time from filing to *trial* (*see* Defs.' Mot. at 6), yet the District of Columbia has a lower median time from filing to *disposition* (*see* Pl.'s Opp'n at 10).  This means that "the statistics regarding court congestion [are] mixed and may also reflect differences other than congestion, such as differences in the types of cases that are likely to be tried in each district[,]" which renders the docket-congestion factor "neutral" in the analysis of the public interest factors.  *Pengbo Li*, 2021 WL 1124541, at *5 (internal quotation marks and citation omitted).

However, with respect to the final public interest factor, it is clear that Nebraska "has a stronger local interest in this case than does the District of Columbia."  *Aftab*, 597 F. Supp. 2d at 83.  As explained above, PSV's suit arises from NSC's denials of its visa petitions, and this plaintiff seeks relief that "ultimately involves a determination of whether [NSC] should be compelled to" approve PSV's applications.  *See id.* at 84.  That makes the instant matter indistinguishable from other cases that have been filed in

the District of Columbia but were subsequently transferred to the district where the field office that made the challenged determination is located. *See, e.g.*, *Pengbo Li*, 2021 WL 1124541, at *6; *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 277 (D.D.C. 2018); *Bourdon*, 235 F. Supp. 3d at 309–10; *see also Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 271 (D.D.C. 2018) (explaining that "[t]he district in which the relevant USCIS Field Office is located is better positioned to be involved in" a lawsuit challenging a decision of that office (internal quotation marks and citations omitted)). Consequently, the public interest factors also weigh in favor of transferring this case.

IV.

Accordingly, and for the reasons discussed above, it is hereby

**ORDERED** that Defendants' Motion to Transfer, ECF No. 13, is **GRANTED**, and this case is **TRANSFERRED** to the District of Nebraska pursuant to 28 U.S.C. § 1404(a).

Date: May 25, 2021

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge